[No. 2,867.]

## CHARLES E. PICKETT v. S. C. HASTINGS ET AL.

EFFECT OF RATIFICATION.—The Act of the Legislature passed May 11th, 1858, ratifying and confirming the ordinance of the Common Council of San Francisco, approved June 20th, 1855, by which the city relinquished the pueblo lands within its corporate limits, to the possessors thereof, made said ordinance take effect by relation, at the date of its passage.

MEANING OF WORDS "LEGAL PROCESS."—By the words "legal process," used in the Van Ness Ordinance, passed by the Common Council of San Francisco, and afterwards ratified by the Legislature, is meant an action brought in a Court of competent jurisdiction.

PARTY ENTITLED TO BENEFIT OF VAN NESS ORDINANCE.—A party who, on the first day of January, 1855, was in the actual possession of land in San Francisco, within the area covered by the Van Ness Ordinance, claiming the same adversely to another party, and who continued in such possession up to the twentieth of June, 1855, and up to the commencement of an action by such other, is *prima facie* entitled to the title conveyed by the Van Ness Ordinance, and it devolves on the other party to show, not only that he was ousted from the possession, but also that his possession was such as within the language of the ordinance, may be recovered by legal process.

Points decided.

MEANING OF WORDS IN VAN NESS ORDINANCE.—The words "may be recovered" in the phrase "may be recovered by legal process," used in the Van Ness Ordinance, mean "shall be recovered."

PERSONS ENTITLED TO BENEFIT OF VAN NESS ORDINANCE.—The persons entitled to the benefit of the Van Ness Ordinance, consist of four classes: First, those who hold title by virtue of the grants and conveyances enumerated in the ordinance; second, those who were in the actual possession by themselves, or by their tenants, on the first day of January, 1855, and so continued up to the twentieth day of June, 1855; third, those whose possession had been "interrupted by an intruder or a trespasser," and "*had been* recovered by legal process;" and fourth, those whose possession had been "interrupted by an intruder or trespasser," and "*may be* recovered by legal process."

IDEM.—The persons embraced in such fourth class, are such as might thereafter recover possession from such intruder, and such recovery was not one which might be had on one of the grants or conveyances mentioned in the ordinance, but a recovery upon some right or title other· than such grants or conveyances.

ACQUISITION OF VAN NESS ORDINANCE TITLE.—One who was in possession of land in San Francisco, embraced within the area of the Van Ness Ordinance, and who was ousted by an intruder before the ordinance took effect, in order to have acquired the Van Ness Ordinance title, must have recovered possession from the intruder by virtue of his prior possession, in a suit commenced before his right of action on his prior possession was barred by the Statute of Limitations. He could not recover from such intruder by virtue of any title vested in him by the ordinance, but the recovery upon the prior possession vested in him the Van Ness Ordinance title.

STATUTE CONFIRMING VAN NESS ORDINANCE.—The statute of March 11th, 1858, ratifying the Van Ness Ordinance, gave to those claiming under the ordinance no new or additional ground of recovery not embraced in the ordinance itself.

POWER OF SAN FRANCISCO OVER ITS PUEBLO LANDS.—The right or· interest which the city of San Francisco had in its pueblo lands, it held subject to the control of the Legislature of the State, and Congress could not control the city in any manner whatever in respect to the disposition of such pueblo lands.

RELEASE BY CONGRESS OF LANDS COVERED BY VAN NESS ORDINANCE.—Whatever right or title, if any, the United States had in the lands embraced within the Van Ness Ordinance, by the act of Congress of July 1st, 1864, passed to the city of San Francisco, for the use and benefit of the persons in whom vested the Van Ness Ordinance title.

STATUTE OF LIMITATIONS AND VAN NESS ORDINANCE.—Persons who, before the passage of the Van Ness Ordinance, had been in possession of land embraced within the area covered by it, and who had been ousted by intruders, and who had no other right or title than such as proceeded from prior possession, must have commenced their actions within the time prescribed by the Statute of Limitations; and the statute commenced running, as to such persons, on the eleventh day of April, 1855.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

Ejectment to recover a tract of land in the city and county of San Francisco, lying on Rincon point, and bounded by Beale street on the southwest, and upon all the other sides by the high water line of the Bay of San Francisco, as said line existed in the year 1846, and as marked upon the official map of said city, containing about seventeen fifty-vara lots; excepting therefrom the portion bounded by Beale, Harrison, and Main streets, and said high water line of the bay.

The defendants were severally in the possession of parcels of the demanded premises, and answered separately, denying the allegations of the complaint, and setting up the Statute of Limitations.

The action was commenced on the sevententh day of April, 1868, and the cause was called for trial on the fifth day of December, 1870.

The plaintiff opened the case by the following statement of what he claimed the facts of the case to be, and what he expected to prove:

The plaintiff Pickett entered into actual possession of the lands described in the complaint, in November, eighteen hundred and forty-six, enclosed them with a fence sufficient to exclude cattle, cultivated a portion of them, built a house upon them which he occupied until November, eighteen hundred and forty-seven, when he went to the Sandwich Islands on a temporary visit, leaving the said house and lands in the charge of Elijah Grimes, then a resident of Yerba Buena, otherwise called San Francisco, where the lands were situated.

About three months after the plaintiff Pickett's departure for the Sandwich Islands, as aforesaid, a party of armed soldiers, pretending to act on behalf of the United States, but in reality without any authority to do so, came upon the said lands, destroyed the said house, and for a long time afterwards the military in command at San Francisco retained possession of the same, but without any valid authority from the United States.

The said plaintiff Pickett endeavored to regain possession of the said lands by application to the military authorities, and to the authorities of the Pueblo of Yerba Buena or San Francisco, and to defendants, but his application was always rejected; he was prevented from resuming possession, but never abandoned his claim.

The defendants afterwards gradually succeeded to the actual possession of the said lands, and were in such actual possession on the first day of January, eighteen hundred and fifty, claiming the same in their own right, adversely to the plaintiff, and have since continued in such possession to the time of the commencement of this action.

The said lands are a portion of the pueblo lands of the Pueblo of Yerba Buena, or San Francisco, for which a confirmation was petitioned for by the city of San Francisco, by a petition filed with the Board of Commissioners to ascertain and settle private land claims in the State of California, by whom said claim was confirmed; thence removed by appeal to the District Court for the Northern District of California; thence removed to the Circuit Court of the United States for the District of California; where a decree of confirmation was finally rendered on the eighteenth day of May, A. D. 1865, in the words and figures following:

"THE CITY OF SAN FRANCISCO ⎫
          *v.*                          ⎬
"THE UNITED STATES.           ⎭

"The appeal in this case, taken by the petitioner, the City of San Francisco, from the decree of the Board of Land Commissioners, to ascertain and settle private land claims in the State of California, entered on the twenty-first day of December, 1854, by which the claim of the petitioner was adjudged to be valid and confirmed to lands within certain described limits, coming on to be heard upon the transcript of proceedings and decision of said Board, and the papers and evidence upon which said decision was founded, and further evidence taken in the District Court of the United States for the Northern District of California, pending said appeal, the said case having been transferred to this Court

by order of said District Court, under the provisions of section four of the Act entitled "An Act to expedite the settlement of Titles to Lands in the State of California," approved July 1st, 1864, and counsel of the United States and for the petitioner having been heard, and due deliberation had, it is ordered, adjudged and decreed, that the claim of the petitioner, the City of San Francisco, to the land hereinafter described, is valid, and that the same be confirmed. The land of which confirmation is made is a tract situated within the county of San Francisco, and embracing so much of the extreme upper portion of the peninsula above ordinary high-water mark (as the same existed at the date of the conquest of the country, namely, the seventh of July, A. D. 1846,) on which the city of San Francisco is situated, as will contain an area of four square leagues; said tract being bounded on the north and east by the Bay of San Francisco, on the west by the Pacific Ocean and on the south by a due east and west line drawn so as to include the area aforesaid, subject to the following deductions, namely: Such parcels of land as have been heretofore reserved or dedicated to public uses by the United States; and, also, such parcels of land as have been by grants from lawful authority vested in private proprietorship, and have been finally confirmed to parties claiming under said grants by the tribunals of the United States, or shall hereafter be finally confirmed to parties claiming thereunder by said tribunals, in proceedings now pending therein for that purpose; all of which said excepted parcels of land are included within the area of four square leagues above mentioned, but are excluded from confirmation to the city. This confirmation is in trust for the benefit of the lot-holders under grants from the pueblo, town or city of San Francisco, or other competent authority, and as to any residue in trust for the use and benefit of the inhabitants of the city.

"San Francisco, May 18th, 1865.

"FIELD, Circuit Judge."

The said lands are also a part of the lands described in a

certain Act of the Legislature of the State of California, entitled " An Act concerning the city of San Francisco, and to ratify and confirm certain ordinances of the Common Council of said city," approved March 11th, 1858 (Laws 1858, p. 52); and also a part of the lands described in Section five of an Act of Congress, passed July 1st, 1864, which said section is in the words-and figures following, to wit:

"SEC. 5. And be it further enacted: That all the right and title of the United States to the lands within the corporate limits of the city of San Francisco, as defined in the Act incorporating said city, passed by the Legislature of the State of California, on the fifteenth of April, 1851, are hereby relinquished and granted to the said city and its successors, for the uses and purposes specified in the ordinances of said city, ratified by an Act of the Legislature of the said State, approved on the eleventh of March, 1858, entitled " An Act concerning the city of San Francisco, and to ratify and confirm certain ordinances of the Common Council of the city," there being excepted from this relinquishment and grant, all sites or other parcels of lands which have been, or now are occupied by the United States for military, naval or other public uses, or such other sites or parcels as may be designated by the President of the United States, within one year after the rendition to the General Land Office, by the Surveyor-General, of an approved plat of the exterior limits of San Francisco, as recognized in this section, in connection with the lines of the public surveys; and provided, that the relinquishment and grant by this Act shall in no manner interfere with or prejudice any bona fide claims of others, whether asserted adversely under rights derived from Spain, Mexico or the laws of the United States, nor preclude a judicial examination and adjustment thereof."

The lands described in the complaint are a part of lands mentioned and referred to in Section 12 of the Act of the Legislature of the State of California, entitled "An Act to authorize the Funding of the Floating Debt of the city of San Francisco, and to provide for the payment of the same,"

passed May 1, 1851, and are a part of the lands which the Commissioners of the Sinking Fund "in said Section 12 of said Act mentioned, were required in and by Section 12, to convey to the Commissioners of the Funded Debt of the city of San Francisco," created by said Act; and said lands described in the complaint were by the said, "the Commissioners of the Sinking Fund," conveyed in accordance to the requirements of said Act to the said Commissioners of the Funded Debt, by deed of conveyance, bearing date of the twenty-first day of May, A.D. 1851.

That the defendants, C. W. Hathaway, S. L. Mastick, Seth Wetherbee, Charles F. Jones, B. Cocks, S. W. Holladay, Charles Hare, George F. Sharp and William Sharp, prior to the first day of April, A. D. 1863, under and by virtue of an Act of the Legislature of the State of California, entitled, "An Act to authorize the Commissioners of the Funded Debt of the city of San Francisco to compromise and settle certain claims to real estate, and to convey such real estate, pursuant thereto," approved April 14, 1862, severally obtained from the said "the Commissioners of the Funded Debt of the city of San Francisco," deeds of conveyance of the respective parcels of lands described in their several answers, which conveyances purported to convey to the said last mentioned defendants, respectively, the lands claimed by them in their respective answers in this action.

The plaintiff insisted that the said conveyances and each of them were wholly inoperative to defeat or impair his right of action in the premises, and had no force of evidence, because—First: No title appeared in the said Commissioners of the Funded Debt to any of the premises in controversy. Secondly: Said conveyances did not contain the recitals required by the laws under which the same were made showing proof of publication of the award therein mentioned according to said laws. Thirdly: Said conveyances did not contain recitals showing that the value of the respective lands was ever ascertained or paid, as prescribed by said laws under which the same were executed. Fourthly: Said conveyances did not contain any recitals showing that the expenses of the respective proceedings before said Commissioners of

the Funded Debt, had been paid before said conveyances respectively were executed. Fifthly: That said conveyances did not affect the rights of the said plaintiff in any respect. Sixthly: That if the said conveyances, or any of them in any way affected the rights of the plaintiff, it was only by conveying to the respective grantees therein an interest in said lands of which they instantly became seized to the sole use of the said plaintiff, which use instantly executed itself, and vested said interest in the said plaintiff solely.

The plaintiff having finished his statement of the case, the defendants, by their counsel, demurred to the statement in open Court, and moved for a nonsuit thereon, and insisted, that admitting for the purpose of said motion, that the showing of the plaintiff was, in all respects true, as matter of fact, it did not appear that the plaintiff ought to have judgment against any of the defendants in the action, but that, on the contrary, it did appear that the defendants, and each of them, should have judgment against the plaintiff.

The Court, thereupon, granted the motion, to which decision the plaintiff excepted.

The plaintiff appealed from the judgment.

*John W. Dwinelle* and *John B. Harmon,* for Appellant.

The plaintiff below had prior possession. The Statutes of Limitation do not apply. The fee of the lands was in the United States until the legislative grant by Congress in 1854. No statute ran against that fee. None began to run until the passage of the Act of 1864. The action was brought within five years from the passage of that Act. The Hawes Act (limitation of one year) never applied to this or any other action. (Const. U. S., Art. I., Sec. 10; Treaty of Guadalupe-Hidalgo; Organic Act of Congress of 1851, admitting California into the Union.)

*John W. Dwinelle,* also for the Appellant.

The entry directed to be made of city lands described in Section 1 of the Van Ness Ordinance, was supposed to be authorized by an Act of Congress entitled: "An Act for

the relief of the citizens of towns upon the lands of the
United States, under certain circumstances," passed May
23, 1844 (U. S. Statutes at large, Vol. V., page 657), which
is as follows: The Act of Congress has this value: that it
shows that Congress thought that the United States,
being a donor of a trust in public lands, for the benefit of
occupants of the same, would be the visitor and controller
of that trust, unless it relinquished the right of visitation
and control to some other person or authority. It there-
fore expressly relinquished them, in this instance, to the
Legislature of the respective State or Territory.

But the inherent defect of the Van Ness Ordinance was
this: that the lands in question were pueblo lands, and
that the title to them was to be acquired by confirmation of
the city's claim, by the Courts of the United States, fol-
lowed by an official survey, and a patent issued by their
executives. This vice infected the confirmation of the Van
Ness Ordinance by the Legislature (Laws 1858, p. 52.) The
Legislature supposed that the city's title of the lands came
through the entry of the same in the United States Land
Office, under the Act of Congress cited in the next pre-
ceding paragraph, and that the Legislature of California,
under and by the very terms of that Act had become the
executors of the trust created by it. Whereas the city took
nothing by such entry in the Land Office; the Legislature
never had any control over the trust; nor had the city even
any interest in the lands, except that derived from the con-
firmation of the Pueblo Claim, by the United States Cir-
cuit Court, and the Act of Congress of 1864, which follows
it. (*Lynch* v. *Bernal*, 9 Wallace, U. S. R. 315.)

This confirmation is, first, for "lot-holders," a specific class
of persons, namely: those holding lots, building and sowing
lots, the only lots which could be granted by the Pueblo au-
thorities, and does not extend to grants made by the city for
the payment of its debts, whether funded or otherwise. Sec-
ondly, the residue is in trust for the use and benefit of the in-
habitants of the city. For what trust, and what use and bene-
fit? The same trust, and use and benefit which had always
been stamped upon the residue of the ungranted pueblo

lands, for the use of the inhabitants, as commons of wood, water and pasture. But, meanwhile, and in anticipation of this decree of confirmation of its pueblo lands to the city of San Francisco, Congress, by section 5 of "an Act to expedite the settlement of Titles to Lands in the State of California," approved July 1st, 1864, (U. S. Statutes at Large, Vol. 13, p. 332,) had itself relinquished the lands in question to the city of San Francisco, for the purposes specified in the Van Ness Ordinance.

In confirming the claim of the city of San Francisco to its pueblo lands, Judge Field uses the following language: " It is difficult to determine with precision the exact character of the right or title held by pueblos to the lands assigned to them. The Government undoubtedly retained a right to control their use and disposition, and to appropriate them to public uses, until they had been vested in private proprietorship. Numerous laws have been cited to show that the title remained absolutely in the Government." (Col. Hist. Addenda, p. 228; *Grisar* v. *McDowell*, 6 Wallace, 362.)

In the case of *Lynch* v. *Bernal*, 9 Wallace U. S. R. 316, the Supreme Court of the United States made a further application of these principles, by holding that all titles asserted under the Van Ness Ordinance must stand or fall with the pueblo title, to be derived from the United States, and that they became vested in the beneficiaries when that title was in any way confirmed, by relation, as of the date of that ordinance. The case of *Merriman* v. *Bourne*, 9 Wallace U. S. R. 592, sustains the same doctrine. This last cited case is of great interest and value, as completing a series of decisions to the effect that Courts of final resort will sustain rights acquired by statute, even if they are acquired for the first time after appeal was taken from the judgment of the Court below. See also *Keller* v. *The State*, 12 Maryland R. 322, and cases cited; *Day* v. *Day*, 22 Maryland, 530. The case of *Lynch* v. *Bernal* is in point in the case in hand, as deciding that titles go back by relation for the purpose of upholding rights, and for no other purpose; *e. g.* to vest the fee of lands, and not to defeat it, by setting a statute of limitation in motion.

As the order in which events actually takes place, is generally, if not always, the logical order, we shall recapitulate them:

First. The city of San Francisco had certain inchoate rights to four square leagues of pueblo lands, which rights were limited upon another inchoate right still more remote, namely: a right to have those lands assigned to it.

Secondly. The city of San Francisco applied to the United States, by petition in the Federal Courts, to have those inchoate rights assigned, and finally confirmed to it in fee simple absolute. (Colonial History, Addenda, pages 119-121.)

Thirdly. The city of San Francisco, June 20th, 1855, (See Laws 1858, p. 52, sec. 1,) passed an order, commonly called the Van Ness Ordinance, by which it assented to the pueblo lands being vested in fee in certain classes of persons, therein described.

Fourthly. The State of California, on March 11th, 1858, assented to the proposition of the city of San Francisco, to convert the right of commons into an estate in fee.

Fifthly. The claim of the city of San Francisco to four squares leagues of land, was disposed of by the Circuit Court of the United States, by confirming the claim. But the estate confirmed was not that estate in fee simple absolute which the city claimed in its petition. The result of the confirmation was: First, to give the legislative control of the streets and plazas to the legislature of California. Secondly, to confirm Alcalde grants to "lot-holders" in fee. Thirdly, to confirm such grants made within the pueblo four square leagues by Spanish and Mexican Governors and Prefects, as had been or should thereafter be confirmed by the Courts of the United States. Fourthly, to confirm reservations made by the executive authorities of the United States. Fifthly, to confirm the residue to the city in trust, as commons for the use of the inhabitants. Sixthly, Congress, by Act of July 1st, 1864, transferred the fee in the lands to certain classes of persons named in the Van Ness Ordinance, and for the uses and purposes therein specified. Seventhly, the United States,

in 1865, dismissed their appeal from the decree of the Circuit Court of the United States confirming the claim of the city, and that decree was finally confirmed. Eighthly, the decree of confirmation and the Act of Congress of July 1st, 1863, are to be construed together, and the Act of Congress of July 1st, 1864, is to prevail and to control the construction. In none of these Acts is there any assent to the five years limitation supposed to be attempted by the Hawes Act of 1864, which is, therefore, null and void so far as titles, limited upon actual possession on or before January 1st, 1855, are concerned. We talk familiarly of vested rights as pertaining to municipal corporations which the legislature may create or annihilate at its pleasure. But, in fact, such use of the term, when interposed between the inhabitants of the city and the legislative power, is a mere perversion of language. There are no such vested rights. (Const. of Cal. Art. 4, Sec. 31; *McLaren* v. *Pennington,* 1 Paige, 102; per Currey, J., *People* v. *Coon,* 28 Cal. 560.) Such rights were created for the first time by the passage of that Act. Those rights were not narrowed by the confirmation in the Federal Courts; but, on the contrary, the scope of the confirmation was enlarged by the statute. The Act of Congress of July 1st, 1864, would have operated without any action of the legislature of California. The United States can grant any portion of the public domain to any class of citizens of San Francisco, and for any use they might prescribe, without the consent of the legislature of California. But, in fact, the legislature did consent in advance.

The fee, then, was in the United States, at least until the passage of the Act of 1864, and until that time no Statute of Limitation began to run.

*Eugene Lies,* for Respondent Grosh.

As the plaintiff has no written conveyance, it is easy to foresee that he will be driven to make good the following propositions: 1. That he is the beneficiary of the Van Ness Ordinance. 2. That this ordinance, even after ratification by the State Legislature, was insufficient to pass any title which the city had, or might thereafter acquire. 3. That

upon the ratification, in 1864, by Congress, the fee for the first time departed from the United States, whereupon, and not before, his cause of action accrued.

Now the plaintiff's course of reasoning seems to be this: That whilst, by the Van Ness Ordinance, the municipal authorities granted to himself the lands described in his complaint, yet, for want of sufficient delegated authority, such grant was originally infirm, and, notwithstanding ratification by the State, remained so until cured by the Act of Congress of July 1st, 1864, when the fee, for the first time, vested in accordance with the provisions of the ordinance, without any backward relation operating to set the statutes of repose in motion as against him. True, he admits, the authors of the ordinance proceeded upon the theory that, in order to have a title to give, entry must be made under a general act of Congressional beneficence, applicable to towns everywhere. But that "theory is false." The donating municipality was not aware of its true rights under a Mexican grant of superior import to the Congressional act in question—a Mexican grant which conveyed some estate, although it failed to confer the fee.

*Porter, Holladay & Weeks,* also, for Respondents.

In this case the record shows confirmation to the city, May 18th, 1865, of her claim filed in the U. S. Land Commission, July, 1852. The confirmation relates back to the filing of the claim, and says the claim was true, *i. e.,* that the city was the owner of the land, as asserted by her, by title derived from the Mexican Government, through the pueblo. This doctrine of relation, as a legal proposition, would seem so natural, logical and just, as to require no citation of authorities in its support. (*Clark* v. *Lockwood,* 21 Cal. 220.)

Some of these defendants have title by deeds, from the Commissioners of the Funded Debt, while others rely simply on their possession and the Van Ness Ordinance. The legal title to all the land in this suit passed to the Commissioners of the Funded Debt, under the conveyance thereof to them, under the Act of 1851. (Statutes of that year, p.

387.) Those of the defendants who have the conveyances from those Commissioners, rest here on their deeds, which carry the legal title. The other of the defendants who have not the conveyance from the Commissioners, rest upon the fact—1st. That the legal title is not in the plaintiff. 2d. That in ejectment he can not recover without it, except as against an immediate trespasser. 3d. That the defendants, being in possession at the proper time, are entitled to the full benefits of the Van Ness Ordinance, which was at the time good and valid as to all except the Commissioners, who do not complain. In other words, the Van Ness Ordinance was not invalid even as to land which the city had then lately conveyed to the Fund Commissioners in trust, for as to such lands, it was valid as a license to occupy, subject only to the claim of the Commissioners. (*Hubbard* v. *Sullivan*, 18 Cal. 523.)

Plaintiff says he has the title, because he was in possession first. Defendants all say they have the legal title, because they were in the actual possession at the proper time to bring them within the letter and spirit of the Van Ness Ordinance, while some have deeds of conveyance from the Commissioners. The grant in the Van Ness Ordinance enures to those in actual possession claiming for themselves. (*Brooks* v. *Hyde*, 37 Cal. 366.)

The so-called Hawes Act, of March 5th, 1864, (Statutes 1863-64, p. 149), is a complete defense to this suit. Plaintiff's brief is directed to the point that he is the grantee meant under the Van Ness Ordinance. We say no. You did not bring your suit within one year after that Act took effect, and you had no actual possession within five years before your suit was commenced. The Hawes Act says: In such case you get no aid from the Van Ness Ordinance.

*E. B. Mastick* and *Bishop & Matthews,* for Respondents Wetherbee and others.

The plaintiff does not bring himself within either the letter or spirit of the Van Ness Ordinance. (*Judson* v. *Mallory*, 40 Cal. 299; *McLaren* v. *Benton*, 43 Cal. 467.)

The Van Ness Ordinance, as confirmed by the Legisla-

ture, operated to vest the title in the donees therein described, in full ownership. (*Hart* v. *Burnett*, 15 Cal. 530; *Payne* v. *Dewey & Treadwell*, 16 Cal. 232; *City and County of San Francisco* v. *Bideman*, 17 Cal. 462; *Carlton* v. *Townsend*, 28 Cal. 222; *Townsend* v. *Greely*, 5 Wallace, 326; *Merryman* v. *Bourne*, 9 Wallace, 592.)

This Court so decided in *Hart* v. *Burnett*, after the most elaborate, full and careful discussion in an opinion of great learning and power. That decision has been acquiesced in by the bench and bar ever since. It has been repeatedly affirmed by this Court in innumerable cases, and the principles therein laid down have formed the rule of decision in determining the title to land in the larger portion of the city of San Francisco. If any questions are to be regarded as settled, we are certainly justified in considering this one of them. If the Court should think otherwise, doubtless further opportunity will be given to discuss it. We shall confine ourselves in this brief to a simple review of what has been decided.

The plaintiff's right of action is barred by the Statute of Limitations. He has nothing but prior possession to rely upon, he does not take under the Van Ness Ordinance, because he is not within its terms, and because he could not at the time he commenced his action have recovered possession by legal process, irrespective of the ordinance.

A party claiming under the third condition of the ordinance, must have the right of recovery in himself, by legal process, without the aid of the ordinance, and if he cannot recover by virtue of his possession which he claims has been intruded or trespassed upon, he cannot recover at all. He must enforce his right to recover within the period of the Statute of Limitations, and gain possession by that means, in order to toll the title to himself.

By the Court, RHODES, J. :

The plaintiff was nonsuited upon his opening statement. It appears therefrom that the plaintiff entered into the actual possession of the premises in controversy in Novem-

ber, 1846, and so remained in possession for about one year; that during his temporary absence a party of soldiers, pretending to act on behalf of the United States, but really without authority, entered upon the premises, destroyed the plaintiff's house thereon, and the military, in command at San Francisco, retained the possession of the premises; that the plaintiff endeavored to regain the possession, but was always prevented from so doing; that the defendants succeeded to the possession, and were in the actual possession thereof on the first day of January, 1850, claiming the same in their own right, and adversely to the plaintiff, and have ever since remained in such possession. The premises are a portion of the pueblo lands of the pueblo of San Francisco, and are a part of the lands described in the act of March 11th, 1858, ratifying and confirming the Van Ness Ordinance (Stats. of 1858, p. 52), and a part also of the lands mentioned in the Act of Congress of July 1st, 1864, confirming the same ordinance (13 U. S. Stats. 332).

The plaintiff claims that by means of those acts, and the operation of the statutes above referred to, he acquired the title in fee to the premises. By the 5th section of the act of Congress of July 1st, 1864, all the right and title of the United States to the lands within the corporate limits of San Francisco, as defined by the Act of April 15th, 1851, with certain exceptions therein named, were relinquished and granted to the city "for the uses and purposes specified in the ordinances of said city, ratified by an act of the Legislature of the said State, approved on the eleventh of March, 1858, entitled 'an act concerning the city of San Francisco, and to ratify and confirm certain ordinances of the Common Council of the city.'"

One of the ordinances referred to in that act is an ordinance which is commonly known as the Van Ness Ordinance. That ordinance having been ratified and confirmed by the Act of March 11th, 1858, took effect by relation, as of the date of its passage. The plaintiff's position is that he took whatever right, title or interest the city then held, and intended to transfer by the ordinance, and that therefore he is one of the persons for whose use the right and title of

the United States was relinquished and granted to the city, by the Act of Congress of July 1st, 1864.

The right, title or interest which was transferred by virtue of the ordinance, may, for convenience, be denominated the Van Ness Ordinance title. The beneficiaries provided for by the ordinance may be divided into four classes: First, those who held title by virtue of the grants and conveyances enumerated in the ordinance; second, those who were in the actual possession, by themselves or by their tenants, on the first day of January, 1855, and so continued up to the twentieth day of June, 1855; third, those whose possession had been "interrupted by an intruder or trespasser," and "had been recovered by legal process;" and fourth, those whose possession had been "interrupted by an intruder and trespasser," and "may be recovered by legal process." The plaintiff, if entitled to benefits of the ordinance, falls within the fourth class.

The defendants having been in the actual possession of the premises on the first day of January, 1855, claiming adversely to the plaintiff, and having continued in possession from thence up to the 20th day of June, 1855, and up to the commencement of this action, are *prima facie* entitled to the Van Ness Ordinance title; and the plaintiff, in order to show that he is entitled to the benefits of the ordinance, and acquired that title, must make it appear not only that his possession was "interrupted by an intruder or trespasser" —that is to say, that he was ousted from the possession— but also that the possession from which he was ousted "may be recovered by legal process." The question as to whether he is entitled to the benefits of the ordinance, depends upon the construction to be given to the language of the ordinance, "may be recovered by legal process." By the words "legal process" is meant an action brought in a Court of competent jurisdiction. The only difficult matter for construction is the words "may be recovered;" and the question arising upon those words is whether they import a right of recovery only, or a recovery in fact—that is to say, whether the Van Ness Ordinance title devolved upon the person who then possessed the right of recovery as against

an intruder or trespasser, or whether it vests in the person who in fact recovers the possession from such intruder or trespasser. We are of the opinion that those words mean, when read with the other words of the section, "shall be recovered." The purpose of the ordinance, as we construe it, was to give the Van Ness Ordinance title to those who had already recovered the possession from an intruder or trespasser, and to those who should thereafter recover the possession from an intruder or trespasser. The recovery contemplated by that provision, was not one which might be had on one of the grants or conveyances, mentioned in the second section of the ordinance, for the persons holding title by virtue of such grants and conveyances, were deemed to be in possession of the lands thereby granted and conveyed, and the Van Ness Ordinance title vested in them immediately upon the taking effect of the ordinance; but the recovery was one which was to be had upon some right or title other than such grants and conveyances. In respect to the first three classes of beneficiaries, as above enumerated, the ordinance makes possession, or that which is declared or would be deemed in law, equivalent to possession, the fact or condition, by virtue of which the Van Ness Ordinance title vests in the grantee; and we are of the opinion that it was contemplated by the ordinance, that those who are comprehended in the fourth class should also have a recovery, by means of which they, like those holding title by virtue of the grants and conveyances, should be deemed to be in possession of the land recovered. As to the persons of the fourth class, the recovery of the possession occupies the place, and stands in the stead, of the actual possession which those of the second class are required to have—it is the fact, the condition, by virtue of which the Van Ness Ordinance title vests in them. Had it been the intention to give that title to those who then had only the right of recovery, it is unaccountable that it should not have been so expressed in the ordinance, instead of saying that it should vest in those who then had recovered, or those who may recover. The expression, "has been recovered or may be recovered," was employed to denote past

recoveries and future recoveries, but neither in the one sense more than the other, do the words signify merely the right of recovery.

If this be the proper construction of the ordinance, the Van Ness Ordinance title has not vested in the plaintiff, and, of course, he cannot rely on it for a recovery in this action. The ordinance declares, in effect, that a person included in the fourth class, who shall recover the possession of the lands from which he was ousted, shall have the Van Ness Ordinance title, but does not declare, nor can it be inferred therefrom, that he shall receive that title not only as the fruits, but also for the purpose, of a recovery.

When such a person has only a prior possession, as the ground upon which to recover the possession from the trespasser or intruder, his rights and his remedies are measured by the same rules that they would be in an action brought for the recovery of the possession of lands situated without said city, and in which the plaintiff relied solely on prior possession. The plaintiff's opening statement shows only one ground upon which he can claim a right of recovery in this action, and that is his prior possession. The statute of March 11th, 1858, gave him no new or additional ground of recovery. It merely ratified and confirmed the ordinance, leaving it in all respects, so far as regards the matters here involved, as it would have been had the Common Council, at the time of the passage of the ordinance, possessed competent authority to dispose of the right, title, or interest of the city in or to the lands within its corporate limits, in the mode adopted by the ordinance. Nor does the plaintiff derive any aid in the solution of the question here involved from the Act of Congress of July 1st, 1864. The right, title, interest, or estate in, or power over, those lands which the city held, prior to the passage of the Act of Congress, she held subject to the control of the Legislature of the State alone; and Congress could not control the city in that respect, in any manner, or for any purpose whatsoever. The act of Congress merely relinquished and granted to the city, for the uses and purposes specified in the ordinance, whatever right or title the United States then held in or to the lands

within the corporate limits of the city, etc.    It is unneces-
sary, for the purposes of this case, to determine what right
or title the United States then held, or what right, title, in-
terest, estate, or power in or over the lands the city held
at the time of the passage of the Act of Congress; but what-
ever right or title in any parcel of those lands the United
States then held, passed to the city for the use and benefit
of the persons entitled to the Van Ness Ordinance title, if
there was any person so entitled.

The sole ground, as already stated, upon which the plain-
tiff can rely for a recovery, is his prior possession; and if
he fails in that, the nonsuit was right.    The defendants
were in the actual possession of the premises on and before
the first day of January, 1855, and so remained from that
time up to the time of the commencement of this action—
the seventeenth day of April, 1868—holding adversely to
the plaintiff, and they set up the Statute of Limitations.
The statute commenced running on the eleventh day of
April, 1855, the day of the passage of the amendatory stat-
ute, and had fully run when this action was commenced.

If the construction we have given to the ordinance be
maintainable, the Statute of Limitations is as applicable
here as to a case in which the controversy turns on the rela-
tive right of the parties growing out of the prior possession
of one party and the adverse possession of the other party,
of lands situated without the city of San Francisco.    We
see nothing in the case which leads to the conclusion that
the Statute of Limitations is not applicable.    Had the ordi-
nance provided that the Van Ness Ordinance title should vest
in the person who should recover from an intruder or tres-
paser in an action to be commenced within a designated
time, can it be doubted that a person claiming the benefits
of the ordinance must have commenced his action within
the designated time?    There is nothing in the ordinance
which gives a further or other time for the commencement
of an action than is prescribed by the Statute of Limita-
tions, nor can it be inferred therefrom that it was intended
that such statute should not be applicable to actions that
might be brought to recover the possession of the lands

from an intruder or trespasser.   The Act of Congress of July 1, 1864, does not have the effect to prevent the running of the statute, or to fix a new time from which the statute would begin to run in cases of this character.   Had the plaintiff acquired the Van Ness Ordinance title before the passage of the Act, then the question might arise whether he could be barred of his action until five years after the passage of the Act; but that question does not arise here, for that Act merely relinquished and granted to the city whatever right and title the United States had, for the uses and purposes specified in the ordinance; and the plaintiff cannot claim the benefit of the Act until he brings himself within the ordinance by a recovery of the possession as therein provided for.   In *Montgomery* v. *Bevans*, 1 Sawyer, 653, both parties claimed under Alcalde's grants—the one issued in 1846, and the other in 1847, and both prior to the treaty, and the Van Ness Ordinance title had vested in the plaintiff ; but the question there considered does not arise here, for the plaintiff, as we have seen, must rely for a recovery upon prior possession alone.

Our conclusion upon this point is, that a person who comes within the fourth class of the beneficiaries provided for by the ordinance, and who at its passage had no other right or title than such as proceeded from prior possession, and who sues an intruder or trespasser to recover the possession of lands, in order to entitle himself to the Van Ness Ordinance title, must have commenced his action within the time prescribed by the Statute of Limitations; and that the statute commenced running in this case upon the passage of the Statute of Limitations of April 11th, 1855; and that more than five years having elapsed, after that date, before the action was commenced, and the defendants, during all that time, holding the possession adversely to the plaintiff, the action is barred by the statute.

Judgment affirmed.

McKINSTRY, J., dissenting:

I cannot agree to the construction placed by the majority of the Court upon the second section of the Van Ness Ordinance.

No estate was acquired by any one by means of the ordinance alone; but, in considering its language, it is convenient to regard the ordinance as effecting the purpose intended. That purpose, as I understand it, was to release and grant (*in præsenti*), the right and claim of the city to all the classes of persons mentioned in the second section. The section begins: "The city of San Francisco hereby relinquishes and grants," etc. Much stress has been placed on the words, "has been or may be recovered by legal process;" "may" being considered the equivalent of "shall," and the recovery by legal process held to be a condition precedent to the vesting of the grant. But it is admitted that the rights of such persons as were in possession during the period mentioned, and of those who, having been previously ousted, had recovered the possession before the passage of the order, became fixed—so far as the city could fix them—when the ordinance was adopted; and the granting words equally cover those who had not recovered the possession when the ordinance was passed, but who then had the right of possession by virtue of a prior occupation.

The persons included within the last class could ordinarily acquire the enjoyment of their property only by an action for the recovery of the possession—an action which would determine the prior possession and ouster; and the words "may recover," etc., are simply a declaration of what would have been the legal effect of the grant had these words been omitted. With or without the clause referred to, a proper suit was the mode of ascertaining whether the plaintiff was entitled to the benefits of the ordinance when it took effect. The right and claim of the city was transferred at the date of the ordinance; the result of the legal process, if the plaintiff should be successful, being only to identify the grantee and place him in possession.

Statement of Facts.

If this construction is correct, the opening statement of counsel connected the plaintiff with the pueblo title.

If the plaintiff was connected with the pueblo title, an action by him was not barred by the Statute of Limitations until July 1st, 1869. (*Montgomery* v. *Bevans*, 1 Sawyer R., 653; *Henshaw* v. *Bissel*, Sup. Ct. U. S., Oct. T. 1873.)

I express no opinion as to the other questions presented by the record.